NA4CleyP

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4          v.                          22 Cr. 655 (PAC)

5  PETER LEYMAN,

6              Defendant.

7  ------------------------------x

8                                      New York, N.Y.
                                       October 4, 2023
9                                      11:30 a.m.

10
   Before:
11
                      HON. PAUL A. CROTTY,
12
                                        District Judge
13
                            APPEARANCES
14
   DAMIAN WILLIAMS,
15      United States Attorney for the
        Southern District of New York
16 BY:  KEVIN B. MEAD
        Assistant United States Attorney
17
   ROBERT G. STAHL
18      Attorney for Defendant

19

20

21

22

23

24

25

NA4CleyP

1          (Case called)

2          MR. MEAD:  Good morning, your Honor.  AUSA Kevin Mead

3   appearing for the government.

4          THE COURT:  Mr. Mead.

5          MR. STAHL:  Good morning, your Honor.  Robert Stahl of

6   Stahl/Gasiorowski appearing for Peter Leyman, who is at counsel

7   table.

8          THE COURT:  Mr. Leyman, how are you this morning?

9          THE DEFENDANT:  Good, your Honor.  Thank you.

10          THE COURT:  We're here to take Mr. Leyman's plea to

11   Count One.

12          Mr. Stahl, have you explained the procedure to

13   Mr. Leyman?

14          MR. STAHL:  I have, your Honor.

15          THE COURT:  Please be seated.

16          Swear in Mr. Leyman, please.

17          (Defendant sworn)

18          Please sit down.  Make yourself comfortable.

19          Mr. Leyman, I want to remind you that you're under

20   oath and you have to answer truthfully the questions I put to

21   you.  If you answer falsely, you can be indicted for another

22   crime, perjury, for making a false statement.  If I ask you

23   anything you don't understand, please turn to Mr. Stahl who

24   will clarify for you.  All right?

25          THE DEFENDANT:  Yes, I understand.

NA4CleyP

1    THE COURT:  Could you give us your date of birth and

2 your place of birth, please.

3    THE DEFENDANT:  09/19/1974.

4    THE COURT:  Where were you born?

5    THE DEFENDANT:  Uzbekistan.

6    THE COURT:  Are you a citizen of the United States?

7    THE DEFENDANT:  Yes.

8    THE COURT:  When did you become a citizen?

9    THE DEFENDANT:  2009.

10    THE COURT:  How far did you get in school?

11    THE DEFENDANT:  I didn't go to school here, I go to

12 school in Russia.

13    THE COURT:  How far did you get in that school?

14    THE DEFENDANT:  Up to the -- I just finish the school

15 and then I come over here.

16    THE COURT:  College or high school?

17    THE DEFENDANT:  High school.

18    THE COURT:  And have you worked?

19    THE DEFENDANT:  Yes.

20    THE COURT:  What did you do?

21    THE DEFENDANT:  I do construction.

22    THE COURT:  Are you currently under the care of a

23 physician or psychiatrist for any mental or emotional problems?

24    THE DEFENDANT:  No, nothing.

25    THE COURT:  Are you addicted to narcotics?

NA4CleyP

1          THE DEFENDANT:  No.

2          THE COURT:  Have you had any drugs, medicine or pills,

3    or alcoholic beverages in the last 24 hours?

4          THE DEFENDANT:  No.

5          THE COURT:  Is your mind clear this morning?

6          THE DEFENDANT:  Yeah, my mind is clear, yeah.

7          THE COURT:  You know what you're doing?

8          THE DEFENDANT:  Yes, I know what I'm doing.

9          THE COURT:  Mr. Stahl is your attorney?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Did he give you a copy of the indictment?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Did you read a copy of the indictment?

14          THE DEFENDANT:  Yeah, he read it for me.

15          THE COURT:  Do you know what you're being charged

16    with?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Has Mr. Stahl explained to you the

19    consequences of pleading guilty?

20          THE DEFENDANT:  Yes, he has explained to me.

21          THE COURT:  Are you satisfied with his counsel,

22    advice, and the representation he's given to you?

23          THE DEFENDANT:  Yes, I am.

24          THE COURT:  Mr. Leyman, before you plead guilty, I

25    have to advise you of the consequences of your plea and the

NA4CleyP

1   valuable rights you are giving up.

2          First of all, you have a right to plead not guilty to

3   the offense charged against you and to persist in that plea.

4   In other words, you don't have to plead guilty.

5          Do you understand that?

6          THE DEFENDANT:  Yeah, I understand.

7          THE COURT:  You have a right to a trial by jury of

8   12 people.  At trial, you would be presumed innocent.  The

9   government would have to prove your guilt beyond a reasonable

10  doubt and the jury of 12 would have to be unanimous.

11         Do you understand?

12         THE DEFENDANT:  Yeah, I understand.

13         THE COURT:  You have the right to the assistance of

14  counsel for your defense and, if necessary, I'll appoint

15  counsel at trial and every stage of the proceeding.

16         Do you understand?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  You have the right to see and hear all the

19  witnesses and have them cross examined on your behalf, and to

20  object to the government's evidence.

21         Do you understand?

22         THE DEFENDANT:  Yes, sir, I understand.

23         THE COURT:  You have the right to testify and present

24  evidence, and the issuance of subpoenas or compulsory process

25  to compel the attendance of witnesses to testify in your

NA4CleyP

1    defense.

2              Do you understand?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  You have the right not to testify and not

5    put on any evidence.  If you did that, the jury would be

6    instructed, it would be told it could not consider your

7    decision not to testify or put on any evidence.

8              Do you understand?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Do you understand that by entering a plea

11   of guilty, if I accept that plea, there'll be no trial, you'll

12   have waived or given up your rights to a trial.

13             Was that discussed with you?

14             THE DEFENDANT:  Yeah.

15             THE COURT:  Do you understand that by pleading guilty,

16   I'll be able to sentence you just as if a jury had returned a

17   guilty verdict after a full trial on the merits?

18             THE DEFENDANT:  Yes, I understand.

19             THE COURT:  I have marked as Court Exhibit 1 a letter

20   dated August 22nd, 2023

21             Is that your signature on the final page, Mr. Leyman?

22             THE DEFENDANT:  Yes, on the left side, that's my

23   signature.

24             THE COURT:  Before you signed this, did you talk to

25   Mr. Stahl?

NA4CleyP

1          THE DEFENDANT:  Yes, I talked with him.

2          THE COURT:  Did you have any questions for Mr. Stahl?

3          THE DEFENDANT:  No.

4          THE COURT:  Do you have any questions now?

5          THE DEFENDANT:  No.

6          THE COURT:  Did anybody make any promises or threats

7     to get you to sign this letter?

8          THE DEFENDANT:  No, nobody.

9          THE COURT:  You signed it voluntarily?

10          THE DEFENDANT:  Yes, I signed it myself, yes.

11          THE COURT:  Now, at page 1 of this letter, Mr. Leyman,

12     it says that you're going to plead guilty to Count One of the

13     above referenced indictment.  This is a conspiracy charge to

14     access, without authorization, the taxi dispatch system of

15     John F. Kennedy Airport for a two-year period between September

16     2019 and September 2021.

17          Count One carries a maximum term of imprisonment of

18     five years, a maximum term of supervised release of three

19     careers, and a maximum fine of the greatest of $250,000, twice

20     the gross pecuniary gain derived from the offense or twice the

21     gross pecuniary loss to persons, other than the defendant,

22     resulting from this offense, and a mandatory $100 special

23     assessment.

24          Do you understand that those are the maximums I can

25     impose on you?

NA4CleyP

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  If you violate the terms of your

3    supervised release, you can be given further time in jail.

4          Do you understand?

5          THE DEFENDANT:  Yes, I understand.

6          THE COURT:  At the bottom of page 1, Mr. Leyman, it

7    says that you admit the forfeiture allegations with respect to

8    Count One of the indictment and agree to forfeit to the United

9    States, pursuant to Title 18, U.S. Code, Section 1030, a sum of

10   money equal to $161,658.26.

11         Do you agree that that is the amount for forfeiture --

12   you're agreeing to that amount for forfeiture?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  I have before me a consent preliminary

15   order of forfeiture money judgment, it's signed by you,

16   Mr. Leyman, and Mr. Stahl.

17         Let me ask you if you can identify that as your

18   signature.

19         THE DEFENDANT:  Yes, this is my signature on the left

20   side.

21         THE COURT:  Why don't you take a look at it.

22         THE DEFENDANT:  Yes, this my signature, yes.

23         THE COURT:  Mr. Stahl, I'll fill in the blank at the

24   bottom of page 1, which talks about the date for pleading.

25   What this provides for is a money judgment in the amount of

NA4CleyP

1    $161,858.26.  That's the amount of proceeds traceable to the

2    offense charged in Count One of the indictment.

3              Pursuant to Rule 32.2(b)(4) of the Federal Rules of

4    Criminal Procedure, this preliminary order of forfeiture is

5    filed as to defendant Peter Leyman and shall be deemed part of

6    the sentence of the defendant and shall be included in the

7    judgment of conviction when we get around to doing the judgment

8    of conviction.

9              Did you and Mr. Stahl discuss your sentencing

10   guidelines?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Do you understand the guidelines and how

13   they're calculated?

14             THE DEFENDANT:  Yes, I understand.

15             THE COURT:  Take a look at page 2 of the August 22nd

16   letter.  In addition to providing for forfeiture, it also

17   provides that you agree to make restitution in the amount of

18   $3,469,619.50 to the Port Authority of New York and New Jersey.

19             Do you understand that you're agreeing to make

20   restitution in that amount?

21             THE DEFENDANT:  Yes, I understand that.

22             THE COURT:  The offense level method of calculation is

23   set forth at page 2 and it provides for an offense level of 25.

24             Do you understand?

25             THE DEFENDANT:  Level 25, yes, sir.

NA4CleyP

1          THE COURT:  And then if you turn to page 3 of the plea

2     agreement, I find that the criminal history category is set at

3     I, resulting in a calculation of the guideline range of 57 to

4     60 months.

5          Do you see how that is calculated?

6          THE DEFENDANT:  Yes, sir, I see it.

7          THE COURT:  Page 4, Mr. Leyman, neither the probation

8     office nor the court is bound by the above stipulated

9     guidelines either as to questions of fact or determinations of

10    the proper guidelines to apply to the facts.

11         Do you understand?

12         THE DEFENDANT:  Yes, I understand.

13         THE COURT:  The next paragraph, it is understood that

14    the sentence to be imposed upon the defendant is determined

15    solely by me, stating the court.  It is further understood that

16    the guidelines are not binding on the court.  The defendant

17    acknowledges the defendant's entry of a guilty plea to the

18    charges maximum authorized sentence in court, to impose any

19    sentence up to and including the statutory maximum.

20         Do you understand?

21         THE DEFENDANT:  Yes, sir, I understand.

22         THE COURT:  In addition to pleading guilty, you're

23    also agreeing to not file a direct appeal or collaterally

24    attack the sentence if the sentence is within the guideline

25    range of 57 to 60 months at or below 57 to 60 months.

NA4CleyP

1        Do you understand?

2        THE DEFENDANT:  Yes, I understand.

3        THE COURT:  Page 5, Mr. Leyman, top paragraph, it says

4   the defendant hereby acknowledges that the defendant has

5   accepted this agreement and decided to plead guilty because the

6   defendant is in fact guilty.

7        Is that a true statement?

8        THE DEFENDANT:  Yes.

9        THE COURT:  Now, you're a citizen of the United

10  States?

11        THE DEFENDANT:  Yes, I am.

12        THE COURT:  Notwithstanding the fact that you're a

13  citizen of the United States, this plea may have consequences

14  with respect to your immigration status.  You want to plead

15  guilty and notwithstanding the consequences that might come?

16        THE DEFENDANT:  Yes.

17        THE COURT:  Mr. Stahl, Mr. Mead, is there anything

18  else you want me to read from the letter of August 22nd?

19        MR. STAHL:  No, your Honor.

20        MR. MEAD:  No, your Honor.  I would like the Court to

21  confirm there are no separate promises apart from those

22  contained in the plea agreement.

23        THE COURT:  Mr. Leyman, this is the entire agreement;

24  right?

25        THE DEFENDANT:  Yes.

NA4CleyP

```
1              THE COURT:  You don't have a separate agreement with

2     the federal government, do you?

3              THE DEFENDANT:  No.

4              THE COURT:  This is it?

5              THE DEFENDANT:  Yeah, this is it.

6              THE COURT:  It contains the entire agreement?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Anything else, Mr. Mead?

9              MR. MEAD:  No, your Honor.

10             THE COURT:  Will the government please rise now and

11    tell us what the essential elements of the offense are for

12    Count One and how you would establish this with proof at trial

13    beyond a reasonable doubt.

14             MR. MEAD:  Yes, your Honor.

15             The defendant is pleading guilty to one count of

16    conspiring to commit a computer intrusion, in violation of

17    Title 18, United States Code, Sections 371 and 1030.

18             In order to prove the defendant's guilt, the

19    government would have to prove the following elements beyond a

20    reasonable doubt:

21             1.  That a conspiracy to commit computer fraud

22    existed;

23             2.  That the defendant willfully joined the conspiracy

24    knowing its unlawful objective; and

25             3.  That one of the coconspirators has taken an overt
```

NA4CleyP

1    act in furtherance of the offense.

2              The government would also need to prove by a

3    preponderance of the evidence that venue is appropriate in the

4    Southern District of New York.

5              In this case, the government has charged a conspiracy

6    to commit computer fraud in two separate ways.

7              The first type of computer fraud that was an object of

8    the conspiracy to access without authorization and obtain

9    information has the following four elements:

10             First, without authorization that a computer was

11   accessed by a conspirator;

12             Second, that the conspirator acted in intentionally;

13             Third, that the conspirator obtained information from

14   a protected computer; and

15             Fourth, that the conspirator acted for the purpose of

16   private financial gain or the devalue of the information

17   obtained was greater than $5,000.

18             The second type of computer fraud that was an object

19   of the conspiracy was to cause the transmission of a harmful

20   computer program and has the following four elements:

21             First, that the conspirator knowingly caused the

22   unauthorized transmission of a program, or information, or

23   code, or command to a protected computer;

24             Second, that the conspirator caused the transmission

25   of the program with the intent to damage;

NA4CleyP

1          Third, the conspirator thereby caused damage; and

2          Fourth, that the conspirator's actions caused a loss

3    aggregating at least $5,000 in value during any one-year period

4    to one or more persons.

5          The government would prove that the defendant was a

6    member of a conspiracy to hack the taxi dispatch system at

7    JFK Airport between approximately September 2019 and September

8    2021, and to sell access to taxis via that system, and that the

9    defendant knew the operations and aims of the conspiracy.

10          The government's evidence would establish that members

11    of the conspiracy accessed the taxi dispatch system and

12    obtained information from it without authorization for the

13    purpose of financial gain, and that members of the conspiracy

14    caused the unauthorized transmission of information or code, it

15    deliberately altered the data in the taxi dispatch system, and

16    thereby caused more than $5,000 in harm to the Port Authority

17    that administers JFK Airport.

18          In furtherance of the conspiracy, the defendant wired

19    money to a coconspirator in Russia, the coconspirator sent

20    messages to taxi drivers in the United States.

21          The government's evidence would further establish that

22    the computers in the taxi dispatch system were used in or

23    affecting interstate or foreign commerce.

24          And the government's evidence would include, among

25    other things, coconspirator messages and voice notes,

NA4CleyP

1    recordings made by confidential sources, technical evidence of

2    the unauthorized access of the dispatch system, financial

3    records, and records from the Port Authority establishing that

4    the cost of dealing with the unauthorized access cost more than

5    $5,000.

6              As to venue, the government's evidence would

7    establish:

8              One, that a coconspirator provided direction to the

9    defendant about the scheme while the coconspirator was in

10   Manhattan; and

11             Two, that financial proceeds of the conspiracy were

12   transferred through banks located in the Southern District of

13   New York to coconspirators.

14             THE COURT:  Mr. Stahl, you've conducted an

15   investigation of this matter?

16             MR. STAHL:  I have, your Honor.

17             THE COURT:  Do you have any reason why Mr. Leyman

18   should not plead guilty?

19             MR. STAHL:  I do not.

20             THE COURT:  Mr. Leyman, how do you plead?

21             THE DEFENDANT:  Guilty.

22             THE COURT:  Will you rise now and tell us why you're

23   guilty, what you did.

24             THE DEFENDANT:  Between September 2019 and September

25   2021, in the Southern District of New York, I conspired with

NA4CleyP

1    others to hack the taxi dispatch system at JFK Airport.  The

2    taxi dispatch system determined the order of waiting taxi line

3    between the -- from the holding lot to the pick up passenger

4    point.

5           The dispatch computer system was connected to the

6    internet and the conspiracy did not have authorization to

7    access, but we did so.  I and my coconspirators did not

8    change -- did so charge the taxi drivers $10, jump to the head

9    of the line waiting taxi to pick up the arriving passengers at

10   JFK terminals.

11          My main role in conspiracy was to pick up the money,

12   collect it from the taxi drivers, and I did so a number of the

13   occasions.  I acknowledge --

14          THE COURT:  Mr. Leyman -- excuse me.  I cut you off.

15   Want to finish what you were saying.

16          THE DEFENDANT:  I did so knowledge and willing.

17          THE COURT:  I'm having difficulty understanding

18   Mr. Leyman.  You were reading from a prepared statement;

19   correct?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  And you worked on that statement yourself;

22   is that correct?

23          MR. STAHL:  He worked on it with counsel, your Honor.

24          THE COURT:  Would you mind reading the statement into

25   the record, Mr. Stahl.

NA4CleyP

```
1              MR. STAHL:  Sure.

2              "Between September 2019 to September 2021, in the

3       Southern District of New York and elsewhere, I conspired with

4       others to hack the taxi dispatch system at JFK International

5       Airport.  The taxi dispatch system determined the order of

6       waiting taxis to be dispatched from a holding lot to pick up

7       passengers at the terminals.

8              "The dispatch computer system was connected to the

9       internet and the coconspirators did not have authorization to

10      access it, but did so.  "I" meaning Mr. Leyman "and my

11      coconspirators did so to charge taxi drivers $10 to jump to the

12      head of the line of waiting taxis to pick up arriving

13      passengers at JFK terminals.

14             "My" meaning Mr. Leyman "main role in the conspiracy

15      was to pick up the monies, collect it from the taxi drivers,

16      and did so on a number of occasions.  I did so knowingly and

17      willfully."

18             THE COURT:  Thank you.

19             Is that plea adequate for your purposes, Mr. Mead?

20             MR. MEAD:  Yes, your Honor.

21             THE COURT:  For you, Mr. Stahl?

22             MR. STAHL:  Yes, your Honor.

23             THE COURT:  Please be seated.

24             It's the finding of the Court in the case of the

25      United States of America against Peter Leyman that Mr. Leyman
```

NA4CleyP

```
1    is fully competent and capable of entering an informed plea.
2    He's aware of the nature of the charges and the consequences of
3    the plea of guilty.  The plea of guilty is knowing, voluntary,
4    supported by an independent basis in fact containing each of
5    the essential elements of the offense.  I therefore accept the
6    plea and adjudge Mr. Leyman guilty of the offense charged in
7    22 Cr. 655.
8             Do you have a date for sentencing?
9             THE DEPUTY CLERK:  January 3rd, 2024, at 11:30 a.m.
10            THE COURT:  Is that suitable for you, Mr. Stahl?
11            MR. STAHL:  Your Honor, I would ask for it to be the
12   next week because I'll still be on a family holiday.
13            THE COURT:  Okay.  Next week.
14            THE DEPUTY CLERK:  January 11.
15            THE COURT:  How does that suit you?
16            THE DEPUTY CLERK:  That is fine, your Honor.  Thank
17   you.
18            THE COURT:  Mr. Mead.
19            MR. STAHL:  Same time, 11:00 a.m.?
20            THE DEPUTY CLERK:  2:30 p.m.
21            MR. STAHL:  2:30, thank you.
22            THE COURT:  For the government.
23            MR. MEAD:  Fine for the government, your Honor.
24            THE COURT:  Bail will be continued.
25            Anything else to do today?
```

NA4CleyP

1          MR. MEAD:  No, your Honor.

2          MR. STAHL:  No, your Honor.

3          THE COURT:  Thank you.

4                              *  *  *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25